HON. JOHN B. CLAYBERG,
HON. LEW. L. CALLAWAY,
HON. W. H. POORMAN.

PAXTON, APPELLANT, *v.* WOODWARD, RESPONDENT.

(No. 1,913.)

(Submitted July 9, 1904. Decided October 12, 1904.)

*Libel—Construction of Language — Justification — Answer— Complaint — Sufficiency—Malice — Damages—Jury Question — Evidence — Admissibility — Instructions — Appeal —Constitutional Law.*

(195)

1. To publish by a written unprivileged charge of an individual falsely that he is a common liar is libelous *per se.*

2. In arriving at the sense in which alleged libelous language is employed it is proper to consider the cause and circumstances of its publication and the entire language used.

3. Where an imputation complained of is a conclusion from certain facts, a plea of justification averring the existence of a state of facts which warrants the inference of the charge is sufficient.

4. When the publication is libelous *per se,* the plaintiff may recover general damages without allegations or proof of special damages.

5. Under Section 751, Code of Civil Procedure, when the words are unequivocal in their import and obviously defamatory, it is not necessary to employ colloquium or innuendo to explain their application and meaning; but if the words be of doubtful significance, or derive their libelous character not from their own intrinsic force, but from extraneous facts, it is necessary to allege the meaning intended, or set forth such extraneous facts by proper averments.

6. To say of a school teacher that he is "noted," though used in an invidious sense, and, referring to a particular district, "has done more damage and less good than any other teacher," and, referring to his application for a position as teacher of its school, "this district knows when it has had enough, so it turned the gentleman down," cannot be said to impeach him in any of those qualities which are essentials of an accomplished school teacher, and is not libelous *per se.*

7. In an action for libel, the existence of malice is not a necessary ingredient to entitle plaintiff to recover.

8. In an action for libel malice becomes material only as a circumstance affording a basis for increasing or diminishing the amount of recovery and in cases involving the defense of privileged publication.

9. In an action for libel, where malice is shown, exemplary damages may be added to the compensatory damages.

10. Malice is an inference of fact, which the jury may draw from a libelous publication alone.

11. In an action by a school teacher for libel, evidence that defendant, after the publication of the alleged libel, had tried to have the certificate of plaintiff as a school teacher revoked, is admissible to show malice, but not as a basis for extra compensation.

12. In an action by a school teacher for libel, proof of statements made by defendant after the institution of the suit to the effect that he would take away plaintiff's license as a teacher is admissible to show malice, but not as a basis for extra compensation.

13. In an action for libel it is not error to allow the defendant, as a witness, to be interrogated with respect to his motive in using certain language in the article alleged to be libelous, and to permit him to explain statements therein—whether they were true, and as to the source of his information with respect to their truth—where such facts are involved in the issues presented by the pleadings.

14. Where the instructions given incorporate the substance of those requested, it is not error to refuse to adopt them.

15. An instruction setting forth a clear and concise statement of the nature of the case and the issues to be determined is not objectionable.

16. In an action for libel where there is no suggestion in the complaint that plaintiff was damaged as an individual, but only that the injury was to him in respect to his profession, there can be no recovery of damages to plaintiff as an individual.

17. Where a false and unprivileged publication possessing the ingredients that stamp it as libelous *per se* is established, injury is presumed to ensue therefrom, and affords ground for the allowance of at least nominal damages.
18. While the Constitution, Article III, Section 10, provides, among other things, that in all suits and prosecutions for libel the jury shall determine the law as well as the facts, under the direction of the court, yet, it being the duty of the court to give the jury a correct declaration of the legal principles involved, an erroneous instruction to the prejudice of plaintiff is cause for reversal.

MR. JUSTICE MILBURN dissenting in part.

*Appeal from District Court, Gallatin County; Wm. L. Holloway, Judge.*

ACTION by Cyrus Paxton against A. J. Woodward. Judgment for defendant, and from the judgment and an order denying a new trial, plaintiff appeals. Reversed.

*Mr. John A. Luce,* for Appellant.

The purported justification to the second cause of action was certainly no justification whatever. It purported to refer to and make a part of said justification, defendant's second answer to plaintiff's first cause of action. Such matter could not be incorporated by reference. Each count of the answer must stand or fall by itself. Matters of substance cannot by reference be deemed a part of another count, although matters of inducement may. (*Curtis* v. *Moore,* 15 Wis. 135, Opin. 137-138; *Catlin* v. *Pedrick,* 17 Wis. 88, Opin. 92; *Nelson* v. *Swan,* 13 Johnson, 483-484; *Frazee* v. *Frazee,* 70 Ind. 411; 1st Ency. Pleading and Practice, 852.)

A justification must show all the facts and must meet the points in the sense in which the language was used. (*Wachter* v. *Quenzer,* 29 N. Y. 547; *Skinner* v. *Powers,* 1 Wend. 451.)

The charges must be met directly, and not argumentatively, and according to the sense given to them by the plaintiff. (*Fidler* v. *Delavan,* 20 Wend. 57.)

And it must be as broad as the libel. (*Brooks* v. *Bemiss,* 8 Johns. 455; 18 Am. and Eng. Ency. of Law, 2d Ed., 1069-

1070, and cases cited; 13 Ency. of Pleading and Practice, 84, 85 and 86, and cases cited.)

In order to constitute a justification, it is not enough to state facts which only tend to establish the truth of the charge. (*Thrall* v. *Smiley,* 9 Cal. 530, Opin. 536; *Merk* v. *Gelzhaeuser,* 50 Cal. 631.)

"Where the imputation complained of is a conclusion or inference from certain facts, the plea of justification must aver the existence of a state of facts which will warrant the inference of the charge." (Newell, Defamation, Slander and Libel, p. 652; *VanNess* v. *Hamilton,* 19 Johns. 349.)

"It is a familiar principle that words not actionable without proof of special damage may become so if spoken of one engaged in a particular calling or profession; the rule being that any words spoken of a person in his office, trade, profession, business or means of getting a livelihood, which tend to expose him to the hazard of losing his office or which charge him with fraud, indirect dealings or incapacity, and thereby tend to injure him in his trade, profession or business, are actionable without proof of special damage, even though such words, if spoken or written of an ordinary person, might not be actionable *per se.*" (18 Am. and Eng. Ency. of Law, 2d Ed., 942, 943, and numerous cases cases there cited.)

"Words are to be held actionable *per se* which convey an imputation upon one in the way of his profession or occupation, and in such case there need be no averment of special damages." (*Morasse* v. *Brochu,* 151 Mass. 567, 25 N. E. 74, Opin. 77; *Graeter* v. *Hogan,* 2 Ind. App. 193, 28 N. E. 209; *Quigley* v. *McGee,* 12 Ore. 22, 5 Pac. 347; *Haynor* v. *Cowdon,* 27 Ohio St. 292, Opin. 295; *Watson* v. *Trask,* 6 Ohio, 532-533.)

"At common law there was no redress for defamatory words unless they impute a crime, or relate to a man's trade or profession, or cause some special damages." (*Davis* v. *Sladden,* 17 Ore. 259, 21 Pac. 140, Opin. 141; *Demorest* v. *Harring,* 6 Cow. 76; *Bank* v. *Thompson,* 18 Abb. Pr. 413.)

The pleading of the truth of the libel and the other matters in the plea of justification and the failure of defendant to prove the truth of the same was evidence of malice. (*Jackson* v. *Stetson,* 15 Mass. 48; *Fero* v. *Ruscoe,* 4 N. Y. 162, Opin. 165; *Chamberlin* v. *Vance,* 51 Cal. 75; *Westerfield* v. *Schripps,* 119 Cal. 607, 51 Pac. 958; 18 Am. and Eng. Ency. of Law, 2d Ed., 1006, and cases cited.)

The language itself shows that it was made with malice and that the defendant was actuated by improper and unjustifiable motives and malice was to be presumed. (4 Wait's Actions and Defenses, title of Malicious Intent, pp. 288 to 291, and cases cited.)

"In an action for libel or slander, evidence that the defendant either before or after the publication or utterance of defamatory words, threatened to ruin, injure or expose the plaintiff is admissible as indicating the presence of malice." (18 Am. and Eng. Ency. of Law, 2d Ed., 1006, 1094-1095, and cases cited; *Beals* v. *Thompson,* 21 N. E. 959; *Faxon* v. *Jones,* 57 N. E. 359; *Harris* v. *Zanone,* 93 Cal. 59, 28 Pac. 845, Opin. 847; Odjer's Libel and Slander, 296-310; see further, 18 Am. and Eng. Ency. of Law, 2d Ed., 1009, and cases cited, and 1010; *Westerfield* v. *Schripps,* 51 Pac. 959; *Skinner* v. *Powers,* 1 Wend. 451; *Mowry* v. *Raabe,* 89 Cal. 606; *Sheehey* v. *Cokley,* 43 Iowa, 183.)

Written words imputing want of veracity are actionable without proof of special damages. (18 Am. and Eng. Ency. of Law, 2d Ed., p. 921.) So were the other charges against the plaintiff all actionable *per se.* (4 Wait's Actions and Defenses, 282, 283, 284, 285, 286, 287, and cases cited; *Swan* v. *Thompson,* 56 Pac. 878, Opin. 880; *Upton* v. *Hume,* 33 Pac. 810; *Tonini* v. *Cevasco,* 46 Pac. 103, Opin. 105; 3 Sutherland on Damages, 640, 641, 642, 343-347.)

Section 45 of the Civil Code of California is word for word the same as Section 32 of our Civil Code. The language being libelous *per se,* it was not necessary to allege or prove special

damages. (*Republican Publishing Company* v. *Conroy,* 38 Pac. 423; *Fenstermaker* v. *Tribune Publishing Company,* 45 Pac. 1097; *Turner* v. *Hearst,* 107 Cal. 262, 115 Cal. 394; *McDonald* v. *Woodruff,* 2 Dill. 248; *Eber* v. *Dunn,* 12 Fed. 526.)

The fact that special damages were alleged in aggravation of damages would not preclude the plaintiff from recovery, in this case, of general damages or of exemplary damages. The falseness of the charges against the plaintiff was sufficient ground for the allowance of exemplary damages. (*Bergman* v. *Jones,* 94 N. Y. 51, Opin. on p. 62 and cases cited; *Faxon* v. *Jones,* 176 Mass. 206, 57 N. E. 351; 18 Am. and Eng. Ency. of Law, 2d Ed., 1091, 1092, 1093, 1094, 1095, and cases cited; *Westerfield* v. *Schripps,* 119 Cal. 607, 51 Pac. 958; *Marble* v. *Chapin,* 132 Mass. 225; Sutherland on Damages.)

Substantial damages may be awarded though no actual injury is shown. (Odjer's Slander and Libel, 543; *Bradley* v. *Cramer,* 66 Wis. 298, Opin. 304; *Whittemore* v. *Weiss,* 33 Mich. 348.)

*Messrs. Hartman & Hartman,* for Respondent.

It is very evident that this language is not libelous *per se* except because it was alleged to have been spoken with reference to plaintiff's profession and occupation of school teacher, and it is only claimed to have been libelous in the complaint because it had a tendency to injure him in and did injure him in his said profession. But such language must "touch him in his profession." It must charge lack of the special learning necessary, ignorance of his duties, lack of ability, want of skill or knowledge, in order to be actionable *per se* and entitle him to recover without proof of special damages. (Newell on Slander and Libel, pp. 181, 182, 189, 191, Sec. 30, 197, Notes 8 and 9.) It is not libelous *per se* to say that a man is a liar, or that he has lied, or even that he has sworn to a lie, unless it appears that he has so sworn in judicial proceedings. (Newell on Slander and Libel, pp. 121 to 123, page 125, and on page 127, Notes 7, 8, 13 and 17, pp. 102, 103, 106, Note 2; *Studdord* v. *Trucko,*

31 Ark. 726.)    And, indeed, one might be a liar and yet a very able and efficient school teacher.    We submit that these words did not "touch the plaintiff in his profession," and they are not shown to have been spoken of him in relation thereto.    They do not impeach either his skill or his knowledge or his professional conduct.    We take this to be the rule, where the action is for damages to the calling of plaintiff.    (Newell on Slander and Libel, pp. 168, 169, 174, 175, 176.)    They are clearly not actionable *per se* within the rule laid down by the same author on pages 181, 182, 186, 187, 189, 191 and 192.    In order to make them libelous as touching the plaintiff in his profession, there should have been a colloquium or innuendo or both pointing out the manner in which they so touched and injured him.    (*Legg* v. *Dunleavy,* 80 Mo. 558, 50 Am. Rep. 512; *Petsch* v. *St. Paul Dispatch Printing Company,* 41 N. W. 1034.)

We submit that the portions of the answer criticised show clearly that the allegations of the answer to the first cause of action so incorporated by reference in the answer to the second cause of action above quoted, clearly appear to be matters of inducement and not matters of substance.    Therefore conceding the rule to be as counsel contends, it is complied with.    But, while the rule in some states, notably in Wisconsin, is as appellant insists, it is not so in the majority of the states; and in California and others it is held that, where there are several causes of action in the pleading, it is not necessary to repeat at length the allegations of the first count in any subsequent count, but it is sufficient to refer to them specifically and state that they are to be taken as part of the second cause of action or defense as was done in this case.    (*Trewekk* v. *Howard,* 105 Cal. 434; *Green* v. *Clifford,* 94 Cal. 49; *Hutson* v. *King,* 95 Ga. 271; *Dorr* v. *McKinley,* 91 Mass. 359; *Roeckler* v. *Railway Company,* 10 Mo. App. 448; *Courtis* v. *Bellknap,* 21 Vt. 433; 2 Estee's Pleading, Secs. 3641, 3642.)

The fact that the defendant believed the charges alleged to be libelous, to be true, is proper to be alleged and proved in miti-

gation of damages. (*Fountain* v. *West*, 23 Iowa, 9, 92 Am. Dec. 405; *Wozelka* v. *Hettrick*, 93 N. C. 10.)

It has been held that absence of malice combined with probable cause of belief of defendant that his words were true may constitute a defense and malice will not necessarily be presumed. (*Lester* v. *Corley*, 45 La. Ann. 1006, 13 South. 467.)

Evidence of general reports, that the plaintiff is guilty of an imputed offense is admissible in mitigation. (*Mapes* v. *Weeks*, 4 Wend. 659; *Nelson* v. *Evans*, 12 N. C. 9; *Fuller* v. *Dean*, 31 Ala. 654; *Gray* v. *Ellzroth*, (Ind.) 37 N. E. 551.)

It has been held in Louisiana that where the words were uttered when the parties were engaged in mutual villification and abuse that the plaintiff cannot recover. (*Fulda* v. *Caldwell*, 9 La. Ann. 358; *Goldberg* v. *Dobertwon*, 28 L. R. A. 721, 46 La. Ann. 1303; *Commonwealth* v. *Pavitt*, 2 Del. Co. R. 16.)

The fact that the libel was published under a conviction of its truth arising from probable grounds of suspicion known to defendant at the time of publication, or that it was an honest effort though false to repel an accusation made by plaintiff against defendant, or that he honestly and in good faith believed the charge, may all be shown in mitigation of damages. (*Morris* v. *Lachman*, 68 Cal. 109; *Shattuc* v. *McArthur*, 29 Fed. 136; *Negley* v. *Farrow*, 60 Md. 158, 45 Am. Rep. 715; *Williams* v. *Miner*, 18 Conn. 464; *Fountain* v. *West*, 23 Iowa, 9, 92 Am. Dec. 405; *Shipp* v. *Story*, 68 Ga. 47; *Thompson* v. *Powning*, 15 Nev. 195.)

The defendant may allege and prove prior publications by the plaintiff of a provoking nature in mitigation, and may show generally that the publication was published under provocation although the circumstances of provocation may not be sufficient to justify it. (*Shattuc* v. *McArthur*, 25 Fed. 133; *Thomas* v. *Dunaway*, 30 Ill. 373; *Freeman* v. *Tinsley*, 550 Ill. 497; *Duncan* v. *Brown*, 54 Ky. 186; *Newman* v. *Stien*, 75 Mich. 402, 42 N. W. 956; *Knott* v. *Burwell*, 96 N. C. 272, 2 S. E. 588.)

Where the innuendo attaches a meaning to the language not necessarily arising from it, the justification may allege that by

the demeanor and conduct of the plaintiff at the time the language was used, it was understood to be used in the sense set out in the innuendo. (*Grubb* v. *Elder,* (Kan.) 72 Pac. 790.)

The complaint in the second cause of action did not state facts sufficient to constitute a cause of action, in that the words therein set forth were not actionable *per se,* even when spoken concerning the plaintiff's reputation as a school teacher, unless special damage had been caused thereby, and no special damages were pleaded. (Newell on Slander and Libel, pp. 176, 186, 181, 189, 182; *Foote* v. *Brown,* 8 Johns. 64; *Oakley* v. *Farrington,* 1 Johns. Cases, 130; *Angle* v. *Alexander,* 1 Bing. 119; *Lanchaster* v. *French,* 2 Str. 797; *Cotes* v. *Ketle,* Cro. Jac. 204; *Doyler* v. *Roberts,* 3 Bing. N. C. 835; *Brady* v. *Youlden,* Kerferd & Box's Digest, 709; *Ayre* v. *Craven,* 2 A. and E. 2; *Dooling* v. *Budget Pub. Co.,* 10 N. E. 809.)

Under our Constitution in all suits and prosecutions for libel the truth thereof may be given in evidence, and the jury under the direction of the court shall determine the law and the facts. (Constitution, Art. III, Sec. 10; Newell on Slander and Libel; *People* v. *Seeley,* 72 Pac. 834; *Van Vactor* v. *Walkup,* 46 Cal. 124; *English* v. *English,* 9 Ohio Dec. 167; *Bradley* v. *Cramer,* (Wis.) 48 Am. Rep. 311; *Dicken* v. *Shepherd,* 25 Md. 399; *Skinner* v. *Grant,* 12 Vt. 456; *Downing* v. *Brown,* 3 Colo. 571; *Thompson* v. *Grimes,* 5 Ind. 385; *Nye* v. *Otis,* 8 Mass. 122; *Thompson* v. *Powning,* 15 Nev. 195; *Gibson* v. *Williams,* 4 Wend. 320; *Maynard* v. *Beardsley,* 7 Wend. 560; *Dolloway* v. *Turrill,* 26 Wend. 383; *Railway Co.* v. *McCurdy,* (Pa.) 60 Am. Rep. 363; *Nott* v. *Stoddard,* (Vt.) 88 Am. Dec. 633.)

The objection to the admission of the publication of August 24, 1901 (which was the basis of the second cause of action), was that the court, having excluded any evidence thereunder, it was immaterial and that it only constituted evidence of defamation subsequent to the alleged libel set out in the first cause of action, and the authorities sustain the correctness of this ruling. (*W. & B. R. Co.* v. *Quigley,* 62 U. S. 202; DeWitt

v. *Greenfield,* 5 Ohio, 225; *Skinner* v. *Robertson,* 4 Yeates, 375; *Taylor* v. *Sturgingger,* 2 Mill Const. 367.)

The exclusion of admissible evidence is harmless where the fact involved is established by other evidence. (*Garwood* v. *Wood,* 34 Cal. 248; *Kelley* v. *Fitzell,* 65 Cal. 87; *Smith* v. *Raymer,* (Colo.) 40 Pac. 151; *Clement* v. *Brown,* 30 Ill. 43; *Bull* v. *Griswold,* 19 Ill. 631; *Hand* v. *Kidwell,* 92 Ind. 409; *Doolittle* v. *Railroad Co.,* 20 Kan. 329; *Town* v. *Town,* (Mass.) 29 N. E. 639; *Kilbourn* v. *Fury,* 26 Ohio St. 153; *Jackson* v. *Sharf,* 1 Ore. 246; *Lucas* v. *Brooks,* 85 U. S. 436; *Beshoar* v. *Robards,* (Colo.) 45 Pac. 280.)

Where the evidence excluded would not, with the other evidence of the case, have entitled plaintiff to recover, the exclusion of such evidence is harmless, as is the case here. (*Downing* v. *Hollett,* (Colo.) 40 Pac. 505; *Indianapolis F. & M. Co.* v. *Herkimer,* 46 Ind. 142.)

Neither is the exclusion of proper evidence prejudicial error where it appears that, if admitted, it would not have benefited the party offering the evidence, which also appears in this case. (*Mills* v. *Los Angeles,* 90 Cal. 522; *Meyer* v. *Krohn,* 114 Ill. 574; *Hobart* v. *Plymuth,* 100 Mass. 159.)

Nor will the verdict be disturbed because of the exclusion of proper evidence where it does not appear that the party was injured thereby, as it does not here. (*Dexter* v. *Harrison,* (Ill.) 34 N. E. 46; *Whitaker* v. *Voorhees,* 38 Kan. 71, 15 Pac. 874; *Smith* v. *Collins,* 115 Mass. 388.)

Nor is the exclusion of admissible evidence which could not, if received, have changed the result (as it evidently could not in this case), reversible error. (*Gregg* v. *Moss,* 81 U. S. 564; *Delger* v. *Johnson,* 44 Cal. 182; *Root* v. *Curtis,* 38 Ill. 192; *Ryan* v. *Donley,* 71 Ill. 100; *Fire Insurance Co.* v. *Cary,* 83 Ill. 453; *Shipley* v. *Shook,* 72 Ind. 511; *Moore* v. *Lynn,* 79 Ind. 299; *Baker* v. *Carr,* 100 Ind. 330; *Litsey* v. *Moffett,* 29 Kan. 507; *Cowles* v. *Merchants,* 140 Mass. 377; *B. & B. M. Co.* v. *Sloan,* 16 Mont. 97; *Hart* v. *Johnson,* 6 Ohio, 87; *Box* v. *Kelso,* (Wash.) 31 Pac. 973.)

Where, in an action for libel, defendant is found not guilty of libel in publishing the article set forth in the complaint, the exclusion of other articles than those set out, offered for the purpose of showing malice, is harmless error. (*Phoenix Ins. Co. v. Stewart*, 53 Ill. App. 273; *Morse v. Morse*, 25 Ind. 156.)

Newell on Slander and Libel, page 152, lays down the rule as follows: "The damage must be the immediate consequence of the defamatory words and must be attributable wholly to the words, so that, where the reason of a person's refusing to employ the plaintiff was founded partly on the defendant's words, and partly on the circumstances of his having been previously discharged by another master, it was held that no action was maintainable." Other libels or slanders than the one sued on are not grounds of damage for which compensation may be awarded. (*Ward v. Dick*, 47 Conn. 300, 36 Am. Rep. 57; *Throgmorton v. Davis*, 4 Blackf. 174; *Markham v. Russell*, 94 Mass. 573; *Van Derveer v. Sutphin*, 5 Ohio St. 293; *Chamberlain v. Vance*, 51 Cal. 75; *Schoonover v. Rowe*, 7 Blackf. 202; *Root v. Loundes*, 41 Am. Dec. 762.)

The repetition or republication of the libel cannot be made an extra element of damages for which compensation may be awarded. (*Ward v. Dick*, 36 Am. Rep. 57; *Ransom v. McCurley*, 140 Ill. 626, 31 N. E. 119; *Meyer v. Bohlfing*, 44 Ind. 238; *Burson v. Edwards*, 1 Ind. 164; *Hinkle v. Davenport*, 38 Iowa, 355.)

HON. J. B. LESLIE, Judge of the Eighth Judicial District, sitting in place of MR. JUSTICE HOLLOWAY, delivered the opinion of the court.

This is an action to recover damages for libel. A trial of the cause in the court below resulted in a verdict for the defendant. Plaintiff moved for a new trial, which was denied, and from the judgment and the order overruling said motion the plaintiff appeals.

The complaint embraces two separate counts, in each of which plaintiff claims damages in the sum of $5,000. The first count is for the publication of a certain alleged false, malicious and unprivileged communication on July 13, 1901, in the Avant Courier, a newspaper of general circulation, which publication plaintiff alleges tended to and did injure him in respect to his profession of school teacher. The second count is for a certain other false, malicious and unprivileged publication in said newspaper of August 24, 1901. Answering each count, the defendant admits the publication of said two articles, denies they were false, malicious or unprivileged, or that they tended to or did injure plaintiff in his profession, or that he was injured in any sum whatever. For further answer to each count, the defendant, by affirmative averments, pleads the truth of the matter contained in said publications, and also pleads certain facts in mitigation, not necessary to enumerate. The plaintiff demurred to each defense of the answer upon the ground that the same did not state a defense. This demurrer was overruled, and plaintiff replied.

1. The court did not err in overruling the demurrer to the answer. It is proper to suggest at this time that the first count of the complaint states a cause of action. The article, as set forth in this count, is as follows:

"As to Paxton's popularity as a teacher it can be illustrated by the fact that out of forty-five children in the district but four or five were attending when the superintendent visited the school last week. This is the only school Paxton has taught in the county, and for the good of the schools, I hope it will be the last one. He taught one term in Jefferson, and one in Madison county, and they want no more of him. The statements in the Chronicle are known to be false here. We knew that Paxton was a man of many attainments, but did not know that he was a common liar before. As he has gone to the Crow reservation now he has probably found his level."

Whatever may be said of other portions of the foregoing article, to publish, by a written charge, of an individual, that he is

a common liar, is an imputation tending to expose such indi-
vidual to hatred, contempt, ridicule or obloquy, or injure him
in his occupation; and if untrue, and not privileged, is libelous
*per se,* and actionable.    Such is the very nearly universal con-
clusion of the courts where this question has been adjudicated.
A collection of the cases relating to this subject may be found
in 18 Am. and Eng. Ency. of Law, 2d Ed., p. 921.    See, also,
Townshend, Libel and Slander, Sec. 177.

But returning to the question presented by the demurrer, in
the construction of language regard is to be had to the words
employed, and the meaning which, under all the circumstances
of their publication, may be presumed to have been conveyed
to those to whom the publication is made.    While the written
charge, "We knew that Paxton was a man of many attainments,
but did not know that he was a common liar before," is in its
nature, libelous *per se,* and needs no colloquium or innuendo to
illustrate its application or meaning, and the vice imputed to
plaintiff by the words standing alone is unqualified, and as
broad as language can make it, yet, if the defamatory language
is connected with other language which limits or affects its
meaning, or might tend to mitigate the damage, its construction
must be in relation to such other language, and in arriving at
the sense in which the language is employed it is proper to con-
sider the cause and circumstances of its publication and the
entire language used.    It is apparent on its face that the publi-
cation in question was a part of an article published in response,
in part at least, to certain statements contained in the Chronicle.
The matter set forth in the answer, upon which defendant relies
for justification, is the history of a controversy which continued
for some time between the plaintiff and the defendant, and the
publication in question was a part of one of the articles consti-
tuting this controversy.    The defendant alleges that the charge
above referred to, implying a want of veracity in plaintiff, was
limited in its meaning and application to certain statements
previously published in the Bozeman Chronicle at the instance
of plaintiff, and not otherwise, and that such statements were

untrue. He also pleads facts upon which is based the alleged truth of the other statements contained in said publication. The answer in this respect presented an issue as to the truth of the statements of the publication, upon which defendant was entitled to be heard, and amply meets the requirements of the rule urged by counsel for appellant: "When the imputation complained of is a conclusion from certain facts, the plea of justification must aver the existence of a state of facts which will warrant the inference of the charge." (Newell, Defamation, Slander and Libel, p. 652.)

2. At the trial defendant objected to the introduction of any evidence as to plaintiff's second cause of action upon the ground that the publication was not libelous *per se,* and that no special damages were alleged. The objection was sustained, and plaintiff excepted. Plaintiff's second cause of action is based upon the publication of August 24, 1901, heretofore referred to. The allegations are, in substance, that plaintiff is a school teacher, following that profession; that the article referred to was of and concerning him in his profession, occupation and business as such school teacher, and referred to his application for the position as teacher in the public school at Willow Creek, Gallatin county; that the said publication was false, malicious and unprivileged, and tended to and did injure him in his profession and occupation as a school teacher, to his damage in the sum of $5,000. The article is set forth in the complaint, and is as follows:

"There were a number of applicants for the school, among them being the noted Paxton, who has done more damage and less good than any teacher we have ever had. This district knows when it has had enough, so it turned the gentleman down. A Miss Evans has been offered the position of teacher and we hope soon to have a good school running."

In this count of the complaint there is no colloquium, other than as stated above. There is no innuendo at all, and no allegation of special damages. The only damage claimed is that

sustained by plaintiff in his occupation and profession of school teacher, thus limiting the right of recovery, if any, to such general damages as were sustained in the special relation named. When the publication is libelous *per se,* the plaintiff may recover general damages without allegation or proof of special damages.  In actions of this character "it is not necessary to state in the complaint any extrinsic facts for the purpose of showing the application to the plaintiff of the defamatory matter out of which the cause of action arose; but it is sufficient to state generally that the same was published or spoken concerning the plaintiff."  (Code of Civil Procedure, Sec. 751.)  But in other respects the rules of common-law pleading remain unaltered.

In *Harris* v. *Zanone,* 93 Cal. 65, 28 Pac. 845, in construing a similar statute, the supreme court says:  "If the words used are not libelous in themselves, or if they have some occult meaning or local signification, and require proof to determine their meaning or to show that they are libelous, or if they are words in a foreign language, it is necessary to make such allegation of their meaning as will show them to be actionable, and by averment 'to ascertain that to the court which is generally or doubtfully expressed.'  *Van Vechten* v. *Hopkins,* 5 Johns. 220, 4 Am. Dec. 339.  The statute dispenses with them (that is, the colloquium and innuendo) only so far as they show that the defamatory words applied to the plaintiff, and goes no further.  The averments necessary in common-law pleading to show *the meaning of the words* must still be made"—citing authorities.

When the words are unequivocal in their import, and obviously defamatory, it is not necessary to employ colloquium or innuendo to explain their application and meaning; but if the words be of doubtful significance, or derive their libelous character not from their own intrinsic force, but from extraneous facts, it is necessary to allege the meaning intended, or set forth such extraneous facts by proper averments.  (13 Ency. Plead. and Prac. p. 33, and cases cited.)  To say of a school teacher

that he is "noted," though used in an invidius sense, and referring to a particular district, "has done more damage and less good than any other teacher," and, referring to his application for a position as teacher of its school, "this district knows when it has had enough, so it turned the gentleman down," cannot be said to impeach him in any of those qualities which are essentials of an accomplished school teacher, and to falsely assail which it is slanderous or libelous *per se*. Says Mr. Newell: "It by no means follows that all words to the disparagement of an officer, professional man or trader will, for that reason, without proof of special damages, be actionable in themselves. Words, to be actionable on this ground, must touch the plaintiff in his office, profession or trade. They must be shown to have been spoken of the party in relation thereto, and to be such as would prejudice him therein. They must impeach either his skill or knowledge, or his official or professional conduct." (Newell on Slander and Libel, p. 168, par. 2; p. 174, par. 7.) The publication of August 24th does not disparage plaintiff in, or impute to him a lack of, any of the qualities or qualifications which are prerequisites to the due fulfillment of the duties of a school teacher. It does not appear on the face of the publication that the capacity or skill of the plaintiff as a school teacher, his scholarly attainments, or his professional conduct or integrity, were in any wise involved in the matters referred to, and the court properly withdrew from the jury all consideration of the second count of the complaint.

3.   Plaintiff called defendant as a witness, and offered to prove by him that since the publication constituting the basis of the first cause of action defendant had tried to have revoked the certificate of plaintiff as a school teacher, to which offer objection was made and sustained, and plaintiff excepted. Other witnesses were called by plaintiff, by whom he offered to prove that defendant had stated to them, after the institution of this action, that he would take away the plaintiff's certificate, or words to that effect; to all of which objection was made and sustained, and plaintiff excepted. Plaintiff's assignments with

respect to these offers and the refusal of the court to allow the testimony introduced are Nos. 12, 13, 14, 15, 16, and may be discussed together.

Libel is defined by Section 32 of the Civil Code of Montana as follows: "Libel is a false and unprivileged publication in writing, printing, picture, effigy or other fixed representation to the eye which exposes any person to hatred, contempt, ridicule or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Under this statute the existence of malice is not a necessary ingredient to entitle the plaintiff to recover such sum as will fairly compensate him for the injury sustained. It would present no obstacle to such recovery that the defendant, acting in good faith, had probable cause for belief, and at the time did believe the charge to be true, and was absolutely free from malice.

Two classes of damages may be recovered in actions for libel, to-wit, actual damages and exemplary damages. The presence or absence of malice becomes material only as a circumstance affording a basis for increasing or diminishing the amount of recovery, and in cases involving the defense of privileged publication. The right to recover being shown, and the presence of malice wanting, compensatory damages can only be awarded; but, join to such right of recovery the element of malice, and exemplary damages may be added to the actual or compensatory damages. Malice is an inference of fact which the jury may draw from the libelous publication alone. (*Samuels* v. *Evening Mail Ass'n,* 75 N. Y. 604; *Warner* v. *Press Pub. Co.,* 132 N. Y. 181, 30 N. E. 393; *Clements* v. *Maloney,* 55 Mo. 352; *Schmisseur* v. *Kreilich,* 92 Ill. 348; *Evening News Association* v. *Tryon,* 42 Mich. 549, 4 N. W. 267, 36 Am. Rep. 450.)

The plaintiff may, if he elect to do so, rely solely upon the libelous character of the publication to show malice, but he is not limited to it. He may also call to his aid and make use of any extrinsic facts which tend to show the presence of malice. It is impossible to look into the mind, and interpret the motives

which prompt its action, and resort may therefore be had to acts
and declarations, if any, emanating from the individual touch-
ing the same, and observance of his conduct and bearing in rela-
tion to the subject-matter. While there is some conflict among
the authorities as to the competency of statements and defama-
tory charges made after the commencement of the action, the
better reasoning and decided weight of authority seem to favor
the admissibility of other defamatory charges and of statements
made by the defendant, even though after the commencement
of the action, which may tend to evince a wish to vex, annoy or
injure the plaintiff, but for the purpose only of proving malice,
and not as affording a basis for extra compensation therefor.
Some of the cases bearing upon this subject are: *Post Pub. Co.*
v. *Hallam,* 59 Fed. 530, 8 C. C. A. 201; *Spolek Denni Hlasatel*
v. *Hoffman,* 105 Ill. App. 170; *Hintz* v. *Graupner,* 138 Ill.
158, 27 N. E. 935; *Beals* v. *Thompson,* 149 Mass. 405, 21 N.
E. 959; *Norris* v. *Elliott,* 39 Cal. 72; *Chamberlin* v. *Vance,*
51 Cal. 75; *Harris* v. *Zanone,* 93 Cal. 65, 28 Pac. 845; *Garrett*
v. *Dickerson,* 19 Md. 418; *Fry* v. *Bennett,* 28 N. Y. 324; *Titus*
v. *Sumner,* 44 N. Y. 266; *Robbins* v. *Fletcher,* 101 Mass 115;
*Noeninger* v. *Vogt,* 88 Mo. 589; *Bee Pub. Co.* v. *Shields,*
(Neb.) 94 N. W. 1029; *Larrabee* v. *Minn. Trib Co.,* 36 Minn.
141, 30 N. W. 462; *Faxon* v. *Jones,* 176 Mass. 206, 57 N. E.
359; *Ward* v. *Dick,* 47 Conn. 300, 36 Am. Rep. 75; *Davis* v.
*Starrett,* 97 Me. 568, 55 Atl. 516.

The plaintiff should have been permitted to show the making
by defendant of threats, if any, to secure the cancellation of
his certificate entitling him to teach in the public schools.

4. In assignments of error Nos. 18, 19, 20 and 21 appellant
complains of the action of the court in overruling plaintiff's
objection to certain questions asked defendant with respect to
his motives in using certain language in the articles alleged to
be libelous, and in permitting him to explain certain statements
therein, and whether certain statements made by him were true,
and as to the source of his information with respect to the truth
of certain statements. These were some of the facts involved

in the issues presented by the pleadings, and there was no error in these rulings.

5.   Error is assigned for the refusal of the court to give certain instructions proposed by the plaintiff. In the instructions which were given to the jury, the court incorporated the substance of those offered by plaintiff, and it was not error to refuse to adopt those submitted by plaintiff. (*Territory* v. *Pendry,* 9 Mont. 67, 22 Pac. 760; *State* v. *Mahoney,* 24 Mont. 281, 61 Pac. 647.)

6.   Appellant complains of certain instructions given by the court, to-wit, Nos. 1, 10, 12 and 13. Instruction No. 1 is confined to a statement of the issues of the case. While the jury may be permitted to take with them to the jury room the pleadings in the case, and, if they desire, study the issues for themselves, the practice of setting forth in the instructions a clear and concise statement of the nature of the case and the issues to be determined is to be commended, and the instruction is not objectionable. Instruction No. 10 informed the jury that plaintiff was claiming damages for injury to him in his profession of school teacher, and not as an individual, and in determining whether or not he had been damaged they should consider only such facts and circumstances as tended to show injury to him in the capacity of school teacher, and that they could not consider any facts and circumstances that tended to show injury to him as an individual. There is no suggestion anywhere in the complaint that plaintiff was damaged in his capacity as an individual, but the averments of the complaint are that the injury was to plaintiff in respect to his profession. The action was thus confined, by the terms of the complaint, to such damages as plaintiff might have sustained in his profession, and the court properly excluded from the jury all consideration of damage to plaintiff as an individual.

7.   Instruction No. 13 contains nothing of which plaintiff can complain under the evidence as disclosed by the record.

8.   A more serious question is presented by instruction No. 12. It reads as follows: "You are instructed that plaintiff's

cause of action is for alleged damages to his business as a school teacher, caused by the publication of the alleged libelous matter set out in the complaint on the 13th day of July, 1901, and that you cannot award him any damages unless such damages he may have received, if he have received any, were caused simply and only by said publication, and not otherwise; that is to say, if you should find that the plaintiff was damaged in his position and occupation as a school teacher, but that said damage was brought about and caused partly by the publication of other libels or the statement of other false charges or any other person, then you must find for the defendant, notwithstanding you might also find that the damage was partly caused by the publication set out in the complaint." By this instruction the jury were given to understand that, although the plaintiff might have convinced them by satisfactory proof that he sustained damage in his position as school teacher by the publication of July 13, 1901, yet, if such injury was caused in part by other libelous publications or false charges, it would be the duty of the jury to find for the defendant. Whether this instruction would be permissible in an action in which the plaintiff was seeking to recover special damages alone, or as confined to that character of damages, is not presented by the record in this case, and is not decided. Plaintiff's first cause of action affords a basis, if the facts warranted it, for the recovery of both general and special damages, but a diligent examination of the record fails to disclose any evidence which would entitle the plaintiff to recover any amount in the way of special damages. The maximum of plaintiff's right to recover, therefore, if at all, was only such general damage sustained on account of the publication declared on. When a false and unprivileged publication possessing the ingredients that stamp it as libelous *per se* is established, injury is presumed to ensue therefrom as the direct product of such publication, and affords ground for the allowance of at least nominal damages. (*Wilson* v. *Fitch,* 41 Cal. 386; *Mowry* v. *Raabe,* 89 Cal. 609, 27 Pac. 157; *Childers* v. *San Jose Mercury,* 105 Cal. 284, 39 Pac. 903, 45 Am. St. Rep. 40;

*Turner* v. *Hearst,* 115 Cal. 394, 47 Pac. 129 ; 18 Am. and Eng. Ency. of Law, 2d Ed., p. 1081, and cases cited.)

Referring to this subject, Mr. Sutherland says : "There is no legal measure of damages for such a wrong. The amount which the injured party ought to recover is referred to the sound discretion of the jury. * * * When the publication is actionable *per se,* the legal presumption of damage goes ,to the jury, and they, in view of the particular circumstances of the case, are required, in the exercise of their judgment, to determine what sum will afford reparation." (3 Sutherland on Damages, 643-647.)

To recognize the doctrine embodied in instruction 12 as correct law in its application to an action to recover general damage would operate, in effect, to destroy the legal presumption above referred to of presumed injury inherent in *per se* defamatory charges. It would create a means of defense in actions of this character never contemplated by any principle of law. As pertinently suggested by counsel for appellant, all that a defendant would have to do would be to publish two libels against a party, and then introduce proof to show that he was damaged by both, and plaintiff could recover in neither. It is not an answer to this to say an action could be based upon both. A plaintiff may elect to unite several causes for injuries to character (Code of Civil Procedure, Sec. 672, Subd. 5), but he is not required to do so. Again, the defendant might publish a libelous article, and procure one of similar import to be published by another, and the same result would follow. Such a principle, if it were allowed to control in cases of this character, would seriously jeopardize the interest of a plaintiff whenever he exercised the valuable and unquestionable right to show other defamatory charges for the purpose of proving malice. The case of *Ward* v. *Dick,* 47 Conn. 300, 36 Am. Rep. 57, and others cited by counsel for respondent in support of the correctness of the instruction under consideration, are not in point. They, in effect, decide that other libels or slanders than the one sued

on, or a repetition of the one sued on, cannot be made an extra element of damage for which compensation may be awarded—-a doctrine which will meet with no dissent here. The instruction was an erroneous statement of the law, and the presumption is that it was prejudicial to the plaintiff (*State* v. *Mason,* 24 Mont. 341, 61 Pac. 861), and the judgment should be reversed, unless there is merit in a contention raised by counsel for respondent, based upon Article III, Section 10, Constitution of Montana. So much of the section as relates to this case reads as follows: "In all suits and prosecutions for libel, the truth thereof may be given in evidence; and the jury, under the direction of the court, shall determine the law and the facts."

Counsel for respondent argues that, the Constitution having clothed the jury, in suits and prosecutions for libel, with power to determine the law and the facts, and in this case the jury having found a verdict against the plaintiff, it becomes immaterial how erroneous the instructions of the court may be; that no error can be remedied by appeal, because the instructions are merely advisory, and may be disregarded by the jury in the exercise of this power to determine the law and the facts. The history of this provision shows it is the outgrowth of an act of the English parliament, adopted in 1792, and known as the "Fox Libel Act." Its enactment, in modified forms, into the Constitutions of many of the States of the Union has followed, some of them limiting its operation to criminal prosecutions for libel, while others extend it to civil actions for libel as well; in some is omitted the clause "under the direction of the court," in others it is incorporated, as has been done in the Constitution of this state. (Cooley's Constitutional Limitations, pp. 460, 463.) This provision has received the earnest consideration of the courts of last resort of many of the states, and there exists great contrariety of opinion as to the extent of power conferred upon the jury, independently of the court, to determine the law and the facts and judge of the whole case. A review of the cases relating to this subject can serve no useful purpose here, as the questions whether the jury is required to accept the in-

structions of the court as conclusive, and what power resides in this court to review a case where the instructions and other procedure of the trial court are free from error, are questions not involved in this case. Whatever view is adopted, the courts are almost, if not quite, a unit upon the proposition that it is the duty of the judge to decide upon the sufficiency of the pleadings, the admissibility of testimony, instruct the jury, and discharge the other functions devolving upon him down to the final submission of the cause to the jury, as in other cases. In Missouri, where the doctrine prevails that the jury may disregard the instructions, it is said in *State* v. *Armstrong,* 106 Mo. 395, 16 S. W. 604, 13 L. R. A. 419, 27 Am. St. Rep. 361, that: "While the judge may assist and inform them what the law is, and it is his duty to do so, still they are, by virtue of organic law, the final judges in a prosecution for criminal libel." In *Drake* v. *State,* 53 N. J. Law, 23, 20 Atl. 750, Justice Dixon, construing a similar constitutional provision says: "It was not intended to affect the duty of the court to decide all questions of law relating to the admission of testimony and such other matters as are preliminary to the final submission of the case to the jury; nor to affect its duty to instruct the jury with regard to their legitimate province in the decision of the cause, and with regard to those general principles of the criminal law and of the law of libel which are of a technical nature, and with which the jury can scarcely become acquainted, save through the instructions of the court. None of these matters were ever subject to doubt in prosecutions for libel, nor did they bring about any of the legislation either in England or in this country. On these points the instructions of the court retain the same authority as they previously possessed." See, also, *Arnold* v. *Jewett,* 125 Mo. 241, 28 S. W. 614; *Hazy* v. *Woitke,* 23 Colo. 556, 48 Pac. 1048; *Thibault* v. *Sessions,* 101 Mich. 279, 59 N. W. 624; *State* v. *Zimmerman,* 31 Kan. 85, 1 Pac. 257; *State* v. *Whitmore,* 53 Kan. 343, 36 Pac. 748, 42 Am. St. Rep. 288; *State* v. *Rice,* 56 Iowa, 431, 9 N. W. 343; *Montgomery* v. *State,*

11 Ohio, 424; *State* v. *Syphrett,* 27 S. C. 29, 2 S. E. 624, 13 Am. St. Rep. 616, and cases cited in note. In *State* v. *Rice* and *State* v. *Syphrett, supra,* it was held that an erroneous instruction was ground for reversal.

The duty of the court to instruct the jury being recognized, it follows as a corollary that a correct declaration of the legal principles involved should be given to the jury, otherwise the requirement to instruct would be a needless formality, barren of all useful purpose.

There are other assignments which have been examined but there is no merit in them. Because of the errors referred to, the judgment and order are reversed, and the cause remanded for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY concurs.

MR. JUSTICE MILBURN: I concur in the conclusion and in what is said in the opinion, except as to so much thereof as states or implies that, to say of a school teacher that he has done more damage and less good than any teacher the district ever had "cannot be said to impeach him in any of those qualities which are essentials of an accomplished school teacher, and to falsely assail which it is slanderous or libelous *per se.*"