## FREDERICK REARICK

*v.*

## DANIEL WILCOX.

1. LIBEL—*malice, and right to damages.* The law implies malice from the publication of a libelous article, and the party defamed will be entitled to recover such compensatory damages as he has sustained, regardless of the intent that actuated the publisher of the libel.

2. SAME—*evidence in mitigation of damages.* It is proper for the defendant in a suit for libel to prove the facts and circumstances connected with the publication, to show the absence of malice in fact, and such evidence is competent on the question of exemplary damages, but not as affecting compensatory or actual damages, and the jury should be so instructed.

3. SAME—*excitement of an election as affecting the damages.* In an action for libel it is erroneous to instruct the jury that they may, in mitigation of damages, consider the excitement of an election leading to the publication, or the fact that the article was published for the sole purpose of defeating the plaintiff's election.

4. The fact that the defendant, as the proprietor of a newspaper, in publishing a libelous article against the plaintiff while a candidate for office, was actuated by what he believed to be for the public good, can not be taken and considered in mitigation of damages. An intention to serve the public good does not authorize a defamation of private character.

APPEAL from the Circuit Court of Adams county; the Hon. JOSEPH SIBLEY, Judge, presiding.

Mr. WM. H. GOVRET, ana Messrs. WHEAT & MARCY, for the appellant.

Messrs. WHEAT, EWING & HAMILTON, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action for libel, brought by Frederick Rearick against the publisher and proprietor of the "Quincy Whig," to recover damages for the publication of an article in the paper on the 15th day of April, 1875, in which Rearick, who was then a candidate for the office of police magistrate in the city of Quincy, was, in substance, charged with dishonesty and corruption; that if elected he would improve "every opportunity for peculation that might, by possibility, attach to the office;" that he had been guilty of petty dishonesty while holding the office of mayor; that, by his "own confession," he had been guilty of corruption in respect of the tax levy of 1873; that he had made "scandalous use" of the contingent fund of the city for his own private advantage; that he had used the public money to defray his expenses in quest of the office he was then a candidate for; that if elected the office would be used as a means of practicing and concealing fraud.

To the declaration the defendant pleaded the general issue. A trial was had before a jury, which resulted in a verdict and judgment in favor of the plaintiff for $25, to reverse which the plaintiff in the action has brought this appeal.

The first ground of error relied upon by appellant, to reverse the judgment, is the refusal of the court to give his instruction No. 1.

The substance of the refused instruction was given to the jury in appellant's 4th and 10th, and even if the instruction contained nothing to which exception could be taken, it was not error to refuse it.

The 14th refused instruction related mainly to the question of damages, in case the jury found the defendant guilty; and upon this point they had been fully informed in regard to their duty, in the 6th, 12th and 13th of appellant's instructions,

and it was not error to refuse a repetition, although expressed in different language.

The main question, however, presented by the record, arises upon the instructions given for appellee in regard to the question of damages. They are as follows:

"1. If the jury believe, from the evidence, that at the time of the publication of the article complained of, there was an election pending and about to take place, and that the plaintiff was then a candidate for an office to be filled at such election, and that the paper in which said article was published, was taking an active part in the campaign, and trying to defeat said plaintiff at said election, and that said article was written and published during the excitement of said campaign, for the sole purpose of defeating said plaintiff at said election, and without any malicious intent toward said plaintiff, the jury may take such facts into consideration in mitigation of damages.

" 2. Even though the jury should find the defendant guilty, still, if, from all the facts and circumstances in evidence, the jury believe that the defendant, in making the publication complained of, was actuated solely by what he believed to be for the public good, and not by any malice against the plaintiff, they may take that fact into consideration in assessing damages, and allow to said plaintiff only such damages as they believe, from all the facts and circumstances in evidence, is right and proper, and no more.

" 3. The court instructs the jury that malice is the gist of the action, and that while it is true that malice is inferred from the publication of a libelous article, as matter of law, yet the defendant may show and prove, in mitigation of damages, that there was no malice in fact, and if the jury believe, from all the facts and circumstances in evidence in this case, that the publication complained of was made without any malice in fact, they may and should take that fact into consideration, in determining upon the extent of the damages to be assessed against the defendant.

"4. The court instructs the jury, that although the defendant is, in law, responsible for the publication of the article complained of in this case, whether he knew of or directed its publication or not, yet if the jury believe, as a matter of fact, from the evidence, that the same was written and published by the witness Perkins, and that said defendant had no knowledge thereof until after the same was so written and published, without any malice on the part of said defendant, or of said Perkins, against said plaintiff, the jury may and should take these facts into consideration in determining upon their verdict as to the amount of damages to be assessed against the defendant."

There was no attempt made by appellee to justify or establish the truth of the charges contained in the libelous article.

When, therefore, the appellant proved the publication of the article, the law implied malice, and appellant was entitled to recover such compensatory damages as he had sustained, regardless of the intent that actuated the appellee in the publication of the libel.

While it was proper for the appellee to prove the facts and circumstances connected with the publication, for the purpose of showing the absence of malice in fact, and such evidence was competent for the consideration of the jury on the question of exemplary damages, yet that character of proof could have no bearing and was not proper on the question of compensatory damages.

This distinction was, however, entirely ignored by the instructions of appellee, and the various facts detailed in the different instructions, the jury were told, might be considered in mitigation of the damages, without regard to whether the damages were compensatory or exemplary.

The appellant was entitled to recover, at all events, on account of the publication of the libelous article, damages commensurate with the injury received, and the jury should have been so directed.

The first instruction is liable to the error just mentioned,

and in addition, contained several others. The jury are directed to consider the excitement of the campaign in mitigation of damages.

While the qualification and fitness of a candidate for office might properly be discussed with freedom by the press of the country, we are aware of no case that goes so far as to hold that the private character of a person who is a candidate for office can be destroyed by the publication of a libelous article in a newspaper, notwithstanding the election may be attended with that excitement and feeling that not unfrequently enters into our elections.

Nor can the fact, that the article was published for the sole purpose of defeating appellant, be considered in mitigation, as declared in the instruction.

The law required appellee, as the publisher of a journal, to publish facts, and not libelous articles. The character and reputation of appellant was as sacred, and as much entitled to protection, when a candidate for office, as at any other time.

In the second instruction the jury were told, that if the defendant, in the publication of the article, was actuated solely by what he believed to be for the public good, that fact might be considered in mitigation of damages.

It may be true that appellee supposed, in the publication of the article in question, he was doing a meritorious act to the public. But, however that may be, it would be establishing a dangerous rule to hold that the proprietors of the press might, whenever they thought the public good required it, defame the character of the citizen. The law has given them no such power, and where its exercise is attempted it must be at their peril.

For the error in giving appellee's instructions, the judgment will be reversed and the cause remanded.

*Judgment reversed.*